UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TAYLOR ZIEGLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-01115-SRC |
| | ) |
| SUN LIFE ASSURANCE COMPANY | ) |
| OF CANADA, | ) |
| | ) |
| Defendant. | ) |

**<u>Memorandum and Order</u>**

After Taylor Ziegler experienced pain, fatigue, and other symptoms, her doctor diagnosed various immune-system disorders. Based on those diagnoses, Ziegler sought disability benefits through her employer, which offered an ERISA-governed welfare plan that Sun Life Assurance Company of Canada administered. Sun Life denied her claim. Ziegler then sued Sun Life for wrongful denial of benefits. Now, Sun Life moves for summary judgment.

**I.   Background**

The parties agree that Ziegler participated in an ERISA-governed welfare plan, that Sun Life reviewed and denied her claim for plan benefits, and that she now sues Sun Life under ERISA. But the parties do not produce typical ERISA documents and do not use typical ERISA terminology. Therefore, the Court offers some preliminary clarifications.

For the documents, the parties refer to both a "plan" and an "insurance policy," *see* doc. 43 at ¶¶ 2–3, but in the record, they include only a long-term disability-insurance booklet, which "is intended to provide a summarized explanation for the current Group Policy Benefits," AR 502–03. The parties do not state, and the record does not reveal, if a plan document exists apart from the insurance policy, much less apart from the booklet. Even so, an insurance policy

can constitute a "plan" as defined by ERISA. 29 U.S.C. § 1002(1) ("The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants . . . , through the purchase of insurance or otherwise, . . . benefits in the event of . . . disability . . . ."); *Robinson v. Linomaz*, 58 F.3d 365, 368 (8th Cir. 1995) ("[A]n employer's purchase of an insurance policy to provide health care benefits for its employees can constitute an [employee welfare benefit plan] for ERISA purposes."). Therefore, the Court presumes that the insurance policy constitutes an ERISA plan and, further, that the booklet is the plan document, and refers to them as such.

For terminology, the parties refer to Ziegler as an "insured," *see, e.g.*, doc. 43 at ¶ 7, and the booklet uses the terms "employee" and "you," *see* AR 533. To be consistent with ERISA, the Court refers to Ziegler as a participant. 29 U.S.C. § 1002(7) ("The term 'participant' means any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ."). Further, the parties fail to provide plan language, in either their statement of uncontroverted material facts or the record, identifying Sun Life as the plan administrator. But both parties treat Sun Life as the administrator. *See generally* docs. 43, 45. Because of this and because of the incompleteness of the record, the Court refers to Sun Life as the plan administrator. With these clarifications, the Court finds the following facts undisputed for purposes of summary judgment.

A.     **The plan**

Ziegler sued Sun Life under the Employee Retirement Income Security Act. Doc. 1 at ¶ 1. Previously, Ziegler worked as an ophthalmic technician at Retina Consultants, LTD, doc. 43 at ¶ 1 (citing AR 391); doc. 45 at ¶ 1, and participated in Retina's long-term disability-benefits

2

plan, *id.* at ¶¶ 2, 6 (citing AR 33–38, 502–61); doc. 45 at ¶ 6.  Retina purchased an insurance policy from Sun Life.  Doc. 43 at ¶ 2 (citing AR 33–38, 502–61); doc. 45 at ¶ 2.  And (subject to the Court's clarifications above) the insurance policy is an ERISA welfare-benefit plan.  Doc. 43 at ¶ 3; doc. 45 at ¶ 3.

> The plan establishes when a participant may be eligible to receive long-term disability:
>
> Sun Life will pay a monthly LTD benefit after the end of your Elimination Period, if Sun Life receives proof that you[, the participant,] are:  Totally or Partially Disabled due to an Injury or Sickness; and
>
> under the regular and continuing care of a Physician that provides appropriate treatment and regular examination and testing in accordance with your disabling condition unless you have reached your maximum point of recovery and are still Totally or Partially Disabled.

Doc. 43 at ¶ 7 (citing AR 513); doc. 45 at ¶ 7.  And the plan conditions benefits:

> Sun Life will pay you an LTD benefit, up to the Maximum Benefit Period, if you provide proof that you continue to be Totally or Partially Disabled and you require the regular and continuing care of a Physician.  You need to provide proof when Sun Life asks for it, but the proof is at your expense.  You need to provide Sun Life with proof of your monthly earnings (if applicable) on a quarterly basis.

Doc. 43 at ¶ 8 (citing AR 513); doc. 45 at ¶ 8.

Further, the plan requires proof of claim, *see* doc. 43 at ¶ 11 (citing AR 529); doc. 45 at ¶ 11, and describes "[w]hat is considered Proof of Claim":

> Proof of Claim must consist of at least the following information:
>
> - a description of the disability;
> - the date the disability occurred; and
> - the cause of the disability.
>
> Proof of Claim may include, but is not limited to, police accident reports, autopsy reports, laboratory results, toxicology results, hospital records, x-rays, narrative reports, or other diagnostic testing materials as required.
>
> Proof of Claim for disability must include evidence demonstrating the disability including, but not limited to, hospital records, Physician records, Psychiatric records, x-rays, narrative reports, or other diagnostic testing materials as appropriate for the disabling condition.

3

> Sun Life may require as part of the Proof, authorizations to obtain medical and non-medical information.
>
> Proof of your continued disability and regular and continuous care by a Physician must be given to Sun Life within 30 days of the request for proof.

Doc. 43 at ¶ 14 (citing AR 529); doc. 45 at ¶ 14.

### B.     Ziegler's disability claim

In August 2019, Ziegler, at age 27, sought long-term disability benefits. AR 391–93; doc. 43 at ¶ 21 (citing AR 393); doc. 45 at ¶ 21. On her claim form, Ziegler stated, "After shortly returning from maternity leave[,] I started having mild pain in my joints, which I haven't had issues with my lupus for years, on 6/11/19 severe pain started causing me to leave work unable to use my computer, sit, and trouble walking." AR 391. (The parties claim that Ziegler made this statement on her short-term disability-claim form, *see* doc. 43 at ¶ 20 (citing AR 391); doc. 45 at ¶ 20, but the record shows that she stated this on her long-term disability-claim form, *see* AR 391.)

To support Ziegler's claim, her treating physician, Dr. Richard DiValerio, completed a physician's statement. Doc. 43 at ¶ 23 (citing AR 584–86); doc. 45 at ¶ 23. He noted a primary diagnosis of systemic lupus erythematosus, unspecified and secondary diagnoses of inflammatory polyarthropathy and Sjogren's syndrome. Doc. 43 at ¶ 23 (citing AR 584); doc. 45 at ¶ 23. He then listed symptoms of "diffuse joint + muscle pain, weakness, fatigue + brain fog." Doc. 43 at ¶ 23 (citing AR 584); doc. 45 at ¶ 23.

Dr. DiValerio checked boxes opining that Ziegler would be unable to use her hand for "[s]imple [g]rasping," "[f]irm [g]rasping," "[f]ine [m]anipulation," or "[k]ey [b]oarding" and would only be occasionally able to walk, sit, or stand. AR 585; *see* doc. 43 at ¶ 23 (citing AR

4

585); doc. 45 at ¶ 23. Further, Dr. DiValerio opined that Ziegler was limited to sedentary-capacity work and "no recovery expected." Doc. 43 at ¶ 23 (citing AR 586); doc. 45 at ¶ 23.

In September 2019, Ziegler resigned her position at Retina. Doc. 43 at ¶ 22 (citing AR 341); doc. 45 at ¶ 22. After, to review her claim, Sun Life asked to interview Ziegler and asked for additional medical information. Doc. 43 at ¶ 26 (citing AR 48); doc. 45 at ¶ 26. Sun Life then approved Ziegler's claim for a limited period—through September 17, 2019—and it requested additional information to determine Ziegler's eligibility for additional benefits. Doc. 43 at ¶ 29 (citing AR 568–73); doc. 45 at ¶ 29.

Next, Sun Life, through an intermediary, hired Dr. Taraneh Mehrani, Board Certified in Rheumatology, to review Ziegler's medical file. AR 463. Dr. Mehrani reviewed Ziegler's available records: Ziegler's claims documentation, lab work and diagnostic studies, a medication list summary, and office notes from Dr. DiValerio and another treating physician. Doc. 43 at ¶ 31 (citing AR 464); doc. 45 at ¶ 31. On two occasions, Dr. Mehrani attempted to contact Dr. DiValerio, but Dr. DiValerio did not respond. Doc. 43 at ¶ 31 (citing AR 465); doc. 45 at ¶ 31.

Dr. Mehrani observed that Dr. DiValerio's exams did not document any typical manifestations normally associated with lupus: dry mouth, dry eyes, mouth sores/alopecia/lupus rashes, joint swelling, or deformity. Doc. 43 at ¶ 33 (citing AR 467); doc. 45 at ¶ 33. And she noted, "no internal organ involvement or organ damage (such as lupus nephritis/kidney disease, cardiopulmonary disease, CNS, ["central nervous system," *CNS*, *Dorland's Illustrated Medical Dictionary* (33d ed. 2020),][1] vascular involvement) reported in relation to her SLE[, "systemic lupus erythematosus," AR 467,] and other autoimmune conditions." Doc. 43 at ¶ 33 (citing AR

---

[1] The Court provides some definitions of medical terms for the sake of clarity. In doing so, the Court does not alter or modify the administrative record.

5

467); doc. 45 at ¶ 33.  Further, Dr. Mehrani found no objective evidence for inflammatory arthritis on any exam, lab, diagnostic, or imaging between June and September 2019.  Doc. 43 at ¶ 34 (citing AR 468); doc. 45 at ¶ 34.  According to Dr. Mehrani, the only significant musculoskeletal finding was decreased hand grip.  Doc. 43 at ¶ 34 (citing AR 468); doc. 45 at ¶ 34.

Based on her review, Dr. Mehrani opined that "there is no evidence in the documentation provided to recommend restrictions and/or limitations from a Rheumatologic standpoint for the time period 9/19/19 to present."  Doc. 43 at ¶ 32 (quoting AR 467); doc. 45 at ¶ 32.  She concluded that "[t]here is no evidence in the documentation to support these severe restrictions and limitations or that this young lady should be incapacitated for the rest of her life."  Doc. 43 at ¶ 34 (quoting AR 468); doc. 45 at ¶ 34.  Finally, Dr. Mehrani noted that "SLE/RA ["rheumatoid arthritis," RA, *Dorland's Illustrated Medical Dictionary* (33d ed. 2020),] can flare during pregnancy or the postpartum period," but no evidence in the documentation supports restrictions beyond September 18, 2019.  AR 470; *see* doc. 43 at ¶ 34; doc. 45 at ¶ 34.

In October 2019, Sun Life denied Ziegler's claim for long-term disability benefits.  Doc. 43 at ¶ 36 (citing AR 203–12); doc. 45 at ¶ 36.  Sun Life based its denial on its medical-records review and vocational review.  Doc. 43 at ¶ 36; doc. 45 at ¶ 36.  It found that the medical information submitted by Ziegler failed to support restrictions and/or limitations that would preclude Ziegler from performing the material and substantial duties of her occupation.  Doc. 43 at ¶ 37 (citing AR 203–11); doc. 45 at ¶ 37.

C.     **Ziegler's appeal**

Ziegler appealed the denial of her LTD-benefits claim.  Doc. 43 at ¶ 41 (citing AR 124); doc. 45 at ¶ 41.  In the appeal, Ziegler's counsel stated that Ziegler was unable to perform the

6

duties of her job due to lupus, Sjogren's syndrome, and inflammatory polyarthropathy and that Ziegler suffers from lupus, fibromyalgia, and Raynaud's phenomenon.  Doc. 43 at ¶ 41; doc. 45 at ¶ 41.  Ziegler also provided additional medical records, including a Functional Capacity Questionnaire completed by Dr. DiValerio on April 29, 2020.  Doc. 43 at ¶ 41 (citing AR 128–88); doc. 45 at ¶¶ 41, 43.  In the questionnaire, Dr. DiValerio checked boxes indicating that clinical findings, laboratory and test results, and other symptoms show signs of malar rash (over the cheeks), discoid rash, photosensitivity, and oral ulcers.  Doc. 43 at ¶ 43 (citing AR 183); doc. 45 at ¶ 43.

Sun Life, through another intermediary, then hired Dr. Andrew Sulich, Board Certified in Internal Medicine and Rheumatology, to review Ziegler's medical file.  Doc. 43 at ¶ 44 (citing AR 111, 120); doc. 45 at ¶ 44.  Dr. Sulich reviewed Ziegler's updated medical file, including Dr. DiValerio's statement and records, a residual-functional-capacity form completed by Dr. DiValerio, and records from additional medical-care providers.  Doc. 43 at ¶ 44 (citing AR 111); doc. 45 at ¶ 44.  Like Dr. Mehrani, Dr. Sulich, on two occasions, attempted to contact Dr. DiValerio, but Dr. DiValerio did not respond.  Doc. 43 at ¶ 44 (citing AR 111); doc. 45 at ¶ 44.

After review, Dr. Sulich noted that no objective findings in the records suggested lupus, such as a malar rash, oral ulcers, or joint swelling, doc. 43 at ¶ 45 (citing AR 114); doc. 45 at ¶ 45, and he noted that the records lacked evidence of any swelling, deformity, or weakness, doc. 43 at ¶ 46 (citing AR 115); doc. 45 at ¶ 46.  Dr. Sulich opined that that if Ziegler had active lupus, other clinical manifestations would be present.  Doc. 43 at ¶ 45 (citing AR 116); doc. 45 at ¶ 45.  Further, he opined that no evidence supports Ziegler's alleged limitations in the areas of

7

fine manipulation, grasping, overhead reaching, stair climbing, or stooping or crouching. Doc. 43 at ¶ 46 (citing AR 115); doc. 45 at ¶ 46.

With this, Dr. Sulich concluded that the records did not support a lupus diagnosis. Doc. 43 at ¶ 45 (citing AR 114); doc. 45 at ¶ 45.  Instead, he found the records consistent with claims of pain and fatigue, and he opined that Ziegler's pain and fatigue stemmed from fibromyalgia.  Doc. 43 at ¶ 45 (citing AR 114); doc. 45 at ¶ 45.  Further, he opined that Ziegler's fibromyalgia will remain chronic, but not disabling.  Doc. 43 at ¶ 45 (citing AR 115); doc. 45 at ¶ 45.  Finally, Dr. Sulich concluded that "[t]he medical restrictions and limitations are not supported by the . . . medical records" and that Ziegler can "work a full-time 40 hours a week." AR 115; *see also* doc. 43 at ¶ 46; doc. 45 at ¶ 46.

After Ziegler raised questions concerning Dr. Sulich's report, Sun Life, again through an intermediary, hired a third doctor to review Ziegler's file:  Dr. Neal Greenstein, Board Certified in Rheumatology.  Doc. 43 at ¶ 47 (citing AR 578); doc. 45 at ¶ 47.  Dr. Greenstein reviewed the records, including Dr. DiValerio's notes and conclusions, another treating physician's progress reports, imaging results, lab test reports, and Dr. Mehrani's and Dr. Sulich's medical reviews. Doc. 43 at ¶ 47 (citing AR 574); doc. 45 at ¶ 47.  Like Drs. Mehrani and Sulich, Dr. Greenstein, on two occasions, attempted to contact Dr. DiValerio, but Dr. DiValerio did not respond. Doc. 43 at ¶ 47 (citing AR 574); doc. 45 at ¶ 47.

In his review, Dr. Greenstein noted a discrepancy between Dr. DiValerio's residual-functional-capacity report and Dr. DiValerio's contemporaneous office notes; some symptoms appeared in the report without appearing in the notes.  Doc. 43 at ¶ 48 (citing AR 576–77); doc. 45 at ¶ 48.  Finding the exams "unremarkable," Dr. Greenstein opined that Ziegler's pain complaints were "largely self-reflection and self-perception" and "not objectively confirmed."

8

Doc. 43 at ¶ 48 (citing AR 577); doc. 45 at ¶ 48.  Further, he found no basis for a lupus diagnosis and opined that Dr. DiValerio's prescriptions for Plaquenil, Gabapentin, Percocet, other narcotics, and Celebrex were inconsistent with and inappropriate for fibromyalgia treatment.  Doc. 43 at ¶ 48 (citing AR 576); doc. 45 at ¶ 48.  Dr. Greenstein then concluded, "No restrictions and limitations are supported for the period from 8/23/19 to current."  Doc. 43 at ¶ 49 (citing AR 576); doc. 45 at ¶ 49.

In response to Dr. Greenstein's report, Ziegler's counsel sent a letter to Sun Life, mentioning additional medical providers and arguing that these providers would support Dr. DiValerio's recommended limitations and restrictions.  Doc. 43 at ¶ 50 (citing AR 107–10); doc. 45 at ¶ 50.  But Ziegler and her counsel failed to provide to Sun Life the additional medical records and test results referenced.  Doc. 43 at ¶ 50 (citing AR 455); doc. 45 at ¶ 50.

Sun Life eventually denied Ziegler's appeal, and it explained to Ziegler that her information failed to support her continued eligibility for benefits.  Doc. 43 at ¶ 51 (citing AR 448–56); doc. 45 at ¶ 51.  After this final denial, Ziegler sued Sun Life.  Doc. 1.  Then Sun Life filed a summary-judgment motion, doc. 42, which the Court now addresses.

**II.     Standards**

  **A.     Summary-judgment standard**

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Rule 56(a) also provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party

9

and give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).  Self-serving, conclusory statements without support will not suffice to defeat summary judgment. *Keiran v. Home Cap., Inc.*, 858 F.3d 1127, 1132 (8th Cir. 2017) (citing *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015)).

Further, to determine whether the disputed facts are material, courts "examine the evidence in the context of the legal issues involved." *Lower Brule Sioux Tribe v. State of S.D.*, 104 F.3d 1017, 1021 (8th Cir. 1997).  The existence of disputed facts alone does not prevent summary judgment.  *Id*.  Rather, "the dispute[s] must be outcome determinative under prevailing law." *Id*. (alteration in original) (quoting *Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir. 1989)).

**B.     ERISA standard**

Under ERISA, a plan beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  While ERISA itself does not specify a standard of review, the Supreme Court has held that "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or

10

fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989))); *see also Cash v. Wal-Mart Grp. Health Plan*, 107 F.3d 637, 640–41 (8th Cir. 1997).  "If the plan gives such discretionary authority, the court reviews the plan administrator's decision for abuse of discretion."  *Cash*, 107 F.3d at 641 (citing *Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir. 1996), *abrogated on other grounds by Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)).

Under the abuse-of-discretion standard, the court applies a deferential standard of review to the administrator's plan interpretation and fact-based determinations.  *Donaho*, 74 F.3d at 898.  With this, the court determines only "whether the [plan administrator's] decision was 'reasonable.'"  *Ruessler v. Boilermaker-Blacksmith Nat'l Pension Tr. Bd. of Trustees*, 64 F.4th 951, 959 (8th Cir. 2023) (citing *Roehr v. Sun Life Assurance Co. of Can.*, 21 F.4th 519, 525 (8th Cir. 2021)).  And the court "must uphold [a plan administrator's] decision so long as it is based on a reasonable interpretation of the [p]lan and is supported by substantial evidence."  *Id.* (first alteration in original) (quoting *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016)).

In this analysis, the court must not "substitute [its] own weighing of the evidence for that of the administrator."  *McIntyre v. Reliance Standard Life Ins. Co.*, 73 F.4th 993, 1000 (8th Cir. 2023) (quoting *Gerhardt v. Liberty Life Assurance Co. of Bos.*, 736 F.3d 777, 780 (8th Cir. 2013)).  Rather, "[a] decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision."  *Id*. (emphasis in original) (quoting *Ingram*, 812 F.3d at 634).  "Only when the

11

evidence relied on is overwhelmed by contrary evidence may the court find an abuse of discretion." *Id*. (quoting *Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1142 (8th Cir. 2016)).

## III.   Discussion

Here, the parties do not dispute the standard of review.  *Compare* doc. 43 at 20[2] ("Here, the Plan grants Sun Life discretionary authority"), *with* doc. 45 at 9 (applying "traditional abuse of discretion standard").  Accordingly, and because of the paucity of plan documents in the record, the Court reviews Sun Life's decision for abuse of discretion.  *See Kutten v. Sun Life Assurance Co. of Can.*, 759 F.3d 942, 944 (8th Cir. 2014) ("The parties agree that the Plan grants Sun Life discretionary authority to construe its terms.  [The court] therefore review[s] Sun Life's decision for abuse of discretion." (citing *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998–99 (8th Cir. 2005) (en banc)).

Applying the abuse-of-discretion standard, Ziegler opposes summary judgment on two grounds.  First, she argues that "[a] genuine dispute exists as to whether the plaintiff is required to prove disability by objective evidence, as the three consulting opinions and the resulting decisions rely heavily on a lack of objective findings in the medical evidence."  Doc. 44 at ¶ 1.  Second, she raises an argument based on conflicting medical evidence:  "A genuine dispute exists as to whether plaintiff's pain and fatigue result in functional limitations."  Doc. 44 at ¶ 2.  The Court addresses each argument in turn.

### A.   Objective evidence

First, Ziegler argues that "[a] genuine dispute exists as to whether the plaintiff is required to prove disability by objective evidence, as the three consulting opinions and the resulting decisions rely heavily on a lack of objective findings in the medical evidence."  Doc. 44 at ¶ 1.

---

[2] Excluding the administrative record, the Court cites to page numbers as assigned by CM/ECF.

12

For this point, Ziegler relies on *House v. Paul Revere Life Ins. Co.*, 241 F.3d 1045 (8th Cir. 2001). Doc. 45 at 10. But this reliance is misplaced and misconstrues the law.

In *House*, the Eighth Circuit, basing its decision on the terms of the plan and the administrator's complete lack of evidence, reversed a plan administrator's denial of disability benefits. Unlike the present case—where Sun Life relied on the opinions of three reviewing doctors—the *House* administrator based its denial on the plaintiff's failure to provide any objective medical findings. *Id.* at 1048. Considering this, the Eighth Circuit found that the administrator "possessed not even a scintilla of evidence refuting the extensive documentation of [plaintiff's treating physician]." *Id.*

The Eighth Circuit has since cabined the reach of *House*: "*House* does not state a universal rule that an administrator is precluded from insisting on objective medical evidence when it is appropriate under the terms of a plan and the circumstances of the case." *Pralutsky v. Metro. Life Ins. Co.*, 435 F.3d 833, 839 (8th Cir. 2006) (citation omitted); *see Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 813 (8th Cir. 2006) (citations omitted); *see also Hillery v. Metro. Life Ins. Co.*, 453 F.3d 1087, 1091 (8th Cir. 2006) (citations omitted). Instead, "[t]he evidence a plan administrator may require to prove disability benefit claims depends on the terms of the plan and the circumstances of the case." *Johnson*, 437 F.3d at 813 (citations omitted). Thus, in some circumstances, "it [is] reasonable for the administrator to interpret the plan to require objective evidence as part of the proof and documentation that a claimant was required to submit." *Id.* (citation omitted).

Take, for example, *Pralutsky*: the plan stated "that the claimant must provide, at her own expense, 'documented proof of [her] Disability,' and that if the claimant does not provide 'satisfactory documentation within 60 days after the date we ask for it,' the claim may be

13

denied." *Pralutsky*, 435 F.3d at 839 (citations omitted). But the plan did not define what sort of "proof" or "documentation" was sufficient to establish a disability, allowing the administrator to reasonably define those ambiguous terms. *Id*. Considering this, and considering Eighth Circuit "precedent affirming the reasonableness of a plan administrator denying benefits based on a lack of objective evidence," the court found that it "[could not] say, as a general matter, that it is unreasonable for [the administrator] to interpret the plan to require provision of objective evidence as part of the 'proof' and 'documentation' that a claimant must submit." *Id.*

This case aligns more with *Pralutsky* and its progeny than with *House*. Like in *Pralutsky*, Sun Life's plan states that Ziegler must provide proof of her claim. Doc. 43 at ¶ 11 (citing AR 529); *see also* doc. 43 at ¶ 7 ("Sun Life will pay a monthly LTD benefit after the end of your Elimination Period, if Sun Life receives proof that you are: Totally or Partially Disabled due to an Injury or Sickness." (quoting AR 513)). Further, the plan conditions benefits on the claimant's providing proof:

> Sun Life will pay you an LTD benefit, up to the Maximum Benefit Period, if you provide proof that you continue to be Totally or Partially Disabled and you require the regular and continuing care of a Physician. You need to provide proof when Sun Life asks for it, but the proof is at your expense.

Doc. 43 at ¶ 8 (citing AR 513); doc. 45 at ¶ 8. And without defining "proof," the plan outlines the minimum requirements for "proof of claim":

> Proof of Claim must consist of at least the following information:
>
> - a description of the disability;
> - the date the disability occurred; and
> - the cause of the disability.
>
> Proof of Claim may include, but is not limited to, police accident reports, autopsy reports, laboratory results, toxicology results, hospital records, x-rays, narrative reports, or other diagnostic testing materials as required.
>
> Proof of Claim for disability must include evidence demonstrating the disability including, but not limited to, hospital records, Physician records, Psychiatric

14

> records, x-rays, narrative reports, or other diagnostic testing materials as appropriate for the disabling condition.
>
> Sun Life may require as part of the Proof, authorizations to obtain medical and non-medical information.
>
> Proof of your continued disability and regular and continuous care by a Physician must be given to Sun Life within 30 days of the request for proof.

Doc. 43 at ¶ 14 (citing AR 529); doc. 45 at ¶ 14.  In this section, the plan also states, "Proof must be satisfactory to Sun Life."  AR 529.

As Ziegler admits, "proof" is an ambiguous term.  *See* doc. 45 at 11 ("The word 'proof' is sufficiently broad to encompass either subjective or objective evidence").  But, in a deferential ERISA review, that ambiguity fails to create a genuine issue of material fact.  Rather, as stated in *Pralutsky*, Sun Life has discretion to define "proof" "as long as its interpretation is reasonable." *Pralutsky*, 435 F.3d at 839.  Having discretion to construe terms of the plan, plan administrators can reasonably deny benefits for lack of objective evidence.  *See id.*; *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924–25 (8th Cir. 2004); *Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005) (per curiam); *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002).  Thus, while Ziegler fails to demonstrate that Sun Life actually required objective evidence, even if Sun Life did so, it did not abuse its discretion.

**B.    Conflicting medical evidence**

Ziegler also argues that "[a] genuine dispute exists as to whether plaintiff's pain and fatigue result in functional limitations."  Doc. 44 at ¶ 2.  This argument centers on allegedly conflicting medical evidence:  "[a]dditional material facts support that diagnosis and severity of fibromyalgia is based on entirely subjective reports and that pain cannot be objectively verified."  *Id.* at ¶ 3.  This objection lacks merit.

15

Sun Life has discretion to weigh conflicting evidence, crediting some and rejecting other, and make benefits determinations. *Zaeske v. Liberty Life Assurance Co. of Bos.*, 901 F.3d 944, 950 (8th Cir. 2018) ("As a general rule, a plan administrator has discretion to choose between two reliable but conflicting medical opinions." (citing *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001))); *see also Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) ("[A] plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physicians unless the record does not support the denial." (quoting *Dillard's Inc. v. Liberty Life Assurance Co. of Bos.*, 456 F.3d 894, 899–900 (8th Cir. 2006))). As long as Sun Life's decision was not arbitrary and capricious, the Court must defer to it. *Midgett*, 561 F.3d at 896–97 (citation omitted); *see also Ruessler*, 64 F.4th 951 at 959; *McIntyre*, 73 F.4th at 1000.

Here, Ziegler fails to show that Sun Life's decision was arbitrary or capricious. Even so, ample evidence supports the denial of benefits, and it is dubious that a conflict in the evidence actually exists. *See* doc. 45 at ¶¶ 54–66 (Ziegler citing her attorney's letter, AR 107–10, as medical evidence, which Sun Life was free to give little to no weight because instead of being authored by a medical professional it was authored by Ziegler's attorney); doc. 45 at ¶ 50 (Ziegler admitting that she failed to include in the administrative record the medical records referenced in her attorney's letter).

Sun Life did exactly what the law commits to plan administrators—weigh evidence and come to a decision that has support in the record. *See Midgett*, 561 F.3d at 897; AR 203–12, 448–56. It obtained the opinions of three reviewing doctors, and each doctor reviewed Ziegler's file, disagreed with Dr. DiValerio's diagnosis, and opined that Ziegler lacked a disability. *See*

16

doc. 43 at ¶¶ 31–34, 44–49. Sun Life was not required to favor Dr. DiValerio's opinion just because he was Ziegler's treating physician. *See Zaeske*, 901 F.3d at 950 ("A plan administrator may even prefer the opinion of its own consulting physician over that of an applicant's treating physician." (citing *Nord*, 538 U.S. at 829–34)). And even if the Court might somehow reach a different conclusion, the Court must defer to Sun Life's decision. *McIntyre*, 73 F.4th at 1000; *see also Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1053 (8th Cir. 2011). Thus, the Court finds that Sun Life did not abuse its discretion.

## IV.   Conclusion

Accordingly, the Court grants Sun Life's [42] Motion for Summary Judgment and dismisses this case with prejudice. A separate judgment accompanies this Memorandum and Order.

So ordered this 19th day of August 2024.

          */s/ Stephen R. Clark*
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE